**STATE of Tennessee, Appellee,**

v.

**Michael Joe BOYD, Appellant.**

Supreme Court of Tennessee, at Jackson.

Sept. 24, 1990.

Charles W. Burson, Atty. Gen. & Reporter, Norma Crippen Ballard, Asst. Atty. Gen., Nashville, for appellee.

W. Mark Ward, Asst. Shelby County Public Defender, Memphis, for appellant.

## OPINION

O'BRIEN, Justice.

This is a direct appeal by defendant, Michael Joe Boyd from his conviction for felony murder and sentence of death imposed by the jury. Defendant was also convicted on two (2) charges of armed robbery. He received consecutive life sentences for those offenses. He was represented by the Shelby County Public Defender at the trial and also on this appeal.

Defendant has raised a number of issues which he insists warrant reversal. The first of these to be considered is his charge that the evidence is insufficient to sustain the verdict of the jury.

Defendant was convicted of the felony murder of William Price and of the armed robberies of Price and his companion, David Hippen, in Memphis during the early morning hours of 8 November 1986. On the night of November 7–8, Price and Hippen, who had come to the Memphis area from Kansas City to visit Price's father, drove in Price's Ford van to downtown Memphis to find a motel room. As they proceeded on this mission they decided to solicit some female companionship. They were directed by an individual they met along the way to Raiford's Lounge on Mulberry and Vance Streets, where two women, Barbara Lee and Renita Tate, agreed to accompany them and got into the van. Lee had been at the disco with her boyfriend, the defendant Boyd, and with two other men, Bruce Wright and Terry Yarber.

Price, Hippen and the two women drove to the parking lot of the Lorraine Motel, where Price started to give one of the women a $100 bill to rent two rooms. Because the men would not let both women leave the van at the same time, the two women began to argue about which of them would go to the office to pay for the rooms. At this time apparently all the doors of the van were open. Price was sitting in the driver's seat, Hippen in the passenger seat. Lee was standing outside the van on the passenger's side and Tate was standing outside on the driver's side. The lights were on in the parking lot, and the van's dome and side door lights were also on.

While the women were arguing, Wright, Yarber and the defendant drove up in Wright's gray 1982 Oldsmobile Regency 98 and parked adjacent to the van. Barbara Lee called to the men in the car and asked if they had change for a $100 bill. Defendant left the car, approached the van and reached into his back pocket as if getting his wallet. Barbara Lee was either pushed out of the way by defendant or ran away from the van. Defendant stepped into the van on the passenger side behind the driver's and passenger's seats. He then pointed a pistol toward Hippen's face and said, "I want your money or I'm going to kill you." He snatched the $100 bill from Price's hand. Hippen gave defendant his wallet, which contained $30.

As defendant leaned over Hippen, Price grabbed his arm and shoved it onto the console. Defendant fired a shot and the three men began to struggle over the gun. As the victim started the van and tried to drive away, the defendant "emptied" his gun at him. Injured, Price fell from the van, which crashed into a brick planter at the base of the Lorraine Motel sign.

Defendant jumped from the van and, carrying the gun, ran back to Wright's vehicle. The defendant told Wright to leave because he had some trouble and said "he had shot the dude" and thought he might have killed him. When asked what had happened, defendant said the men had been trying to take his gun.

After Wright's car left, Hippen ran to Price, who was already dead, and then summoned help. A pathologist testified that the cause of Price's death was multiple gunshot wounds. Five or six wounds were found in Price's body. Two of these, one to the heart and another to the spine, had been fatal. All of the bullets had

traveled into the body from right to left, indicating the shots had been fired from the right side of the victim. Hippen had received powder burn injuries to the inside of his legs during the struggle for the gun. Defendant was apprehended on 9 November 1986. At the time he was riding in Wright's automobile. Barbara Lee was driving. At a line-up the next day, Hippen immediately identified him as the assailant. Police found no drugs or weapons in or around Price or the van. No money was found in the van although, according to Hippen, Price had stuffed $500 under the driver's seat of the van because he was afraid the women might steal the money.

Defendant says that the trial jury was not justified in finding him guilty beyond a reasonable doubt because the State's proof was based upon the testimony of Hippen, who had previously been convicted of conspiracy to distribute cocaine. His theory was that, because Wright testified he saw no money or billfold on the defendant when he returned to the car, Hippen had lied about the robbery to conceal his having taken the $500. He attacked Tate's testimony on the basis that she was a prostitute and unworthy of belief. Wright's credibility was attacked because supposedly, he was afraid his parole would be revoked and he had originally lied to the police.

 Questions of credibility of the witnesses are for the jury. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984). Where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2782, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e). The evidence was clearly sufficient to support defendant's convictions of robbery with a deadly weapon and for the homicide of William Price.

Defendant says the trial judge erred in refusing to instruct the trial jury on the lesser offenses of voluntary and involuntary manslaughter. Defendant asserts that such instructions were mandated (1) because of Wright's hearsay testimony that Barbara Lee had told him, when she first got into his car at the time of the shooting, that the defendant and the men in the van were arguing; (2) because the homicide occurred during a struggle over the gun, possibly Hippen's gun; and (3) because of the general lack of credibility of the State's witnesses allowed differing inferences.

 T.C.A. § 40–18–110(a) requires a trial judge charging juries in cases of criminal prosecutions for any felony wherein two or more grades or classes of an offense may be included in the indictment, to charge the jury as to all the law of each offense included in the indictment. While it is generally error in a homicide case for the trial court not to instruct the jury on all lesser included offenses, see *Johnson v. State,* 531 S.W.2d 558 (Tenn.1975), where the record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, it is not error to fail to charge on a lesser offense. *State v. King,* 718 S.W.2d 241, 245 (Tenn. 1986). The trial judge did charge second degree murder. He declined to charge the jury on the offenses of voluntary and involuntary manslaughter. There was clearly no evidence the killing was committed upon a sudden heat produced by adequate provocation; nor was there evidence supporting an involuntary manslaughter charge. As we previously noted, a pathologist testified that the death was caused by multiple gunshot wounds. There was a total of five or six shots to the victim's body. The jury found beyond a reasonable doubt that the defendant had committed armed robbery and felony murder. Any possible error in the jury instructions was completely harmless.

 Defendant's complaint that the trial judge erred in allowing proof of prior consistent statements is entirely without merit. The general rule is, subject to certain exceptions, that evidence of prior consistent statements may not be used to rehabilitate an impeached witness. This is not

what occurred in this case. The State was allowed to place in proper context supposedly inconsistent statements brought into evidence by defendant. Where specific questions and answers taken out of context do not convey the true picture of the prior statement alleged to be inconsistent, it is unfair to permit reference to isolated, unexplained responses by the witness and there is no error in allowing the statements to be placed in context. See *Cole v. State*, 498 S.W.2d 915, 917 (Tenn.Cr.App.1973).

■ Defendant also says the trial judge erred in refusing to allow the defense to prove prior inconsistent statements. Defendant endeavored to prove through his counsel at a preliminary hearing that Hippen, one of the robbery victims, had made a statement inconsistent with his trial testimony. The trial court erroneously disallowed the testimony on the grounds that a proper predicate had not been laid. The inconsistent statement involved Hippen's prior testimony about when Price grabbed defendant's gun during the robbery. The statement was taken out of context and its true meaning is obscure. It dealt with whether Hippen gave the defendant his wallet or not, and the chronological order of events. The discrepancy is trivial or perhaps nonexistent. Hippen's credibility was fully explored at the trial. If any error occurred it was completely harmless.

■ Defendant denounces the introduction into evidence of a police photograph of him portraying both a frontal and side view. All numbers and other marks of identification on the photo were covered. Defendant says that the probative value of the photo is outweighed by its prejudicial effect. The danger in admitting mugshot evidence is that the jury may infer that the photograph came from a prior criminal conviction. See *State v. Weeden*, 733 S.W.2d 124, 126 (Tenn.Cr.App.1987). It has been held, however, that mugshots standing alone are not likely to cause a jury to infer the existence of prior criminal convictions. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn.Cr.App.1983); permission to appeal denied 1983; *United States v. Calarco*, 424 F.2d 657, 661 (2nd Cir.1970), cert. denied

400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 53 (1970). The probative value of the admission of the photograph is questionable since the witness was able to identify the appellant in court without it. However the admission was not error and the issue is overruled.

■ Defendant says it was error for the trial judge to refuse to allow into evidence a pistol found in the possession of Terry Yarber, one of the men in company with defendant the night of the homicide. The significance of the admission of the weapon into evidence escapes us. Although there was some evidence at trial that Yarber had come to the front of Price's van, pointed a pistol at him and began shooting, there was also testimony that there were no bullet holes on the outside of the van. There was no other evidence that Yarber's revolver was used in the robbery of Hippen or used in the commission of the murder of Price. There was nothing else to indicate the admission of the revolver would have any tendency to make the existence of any fact of consequence to the determination of the guilt or innocence of the defendant more or less probable than it would be without the evidence. See *State v. Banks*, 564 S.W.2d 947 (Tenn.1978). The issue is without merit.

■ The next issue challenges the trial judge's action in precluding the defense from questioning a State witness concerning prior bad acts. This related to examining Hippen about the specifics of his prior conviction for conspiracy to distribute cocaine, and particularly the amount of cocaine involved in the offense. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than convictions of crime, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning his character for truthfulness or untruthfulness. We find no abuse of discretion on the part of the trial judge in denying admission of the evidence, and we find the issue to be without merit.

■ Defendant argues that his sentence violates the Eighth and Fourteenth Amendments under the holdings of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), on the theory that he did not have the specific intent to kill and did not intentionally point the gun at the victim, or pull the trigger. The proof in this case clearly shows that the armed defendant announced his intent to kill his robbery victims if they resisted and upon meeting with resistance, shot and killed Price. There is nothing in the evidence in this case to bring it within the scope of the holdings in *Enmund* and *Tison*, that it is a violation of the Eighth Amendment to sentence to death one who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force be employed, or who does not possess the culpable mental state of reckless indifference to human life. This issue is without merit.

■ Defendant says the sentence of death in this case is arbitrary and excessive or disproportionate to the penalty imposed in similar cases. Defendant asserts that the sentence cannot stand when subject to the proportionality review mandated by T.C.A. § 39–2–205(c). He also says the trial judge failed to provide the appropriate information required under Supreme Court Rule 12 to assist this Court in considering the proportionality issue. He further says that he is not aware of any other case in this State in which the death penalty has been imposed in similar circumstances. This observation is inaccurate. There are numerous cases involving similar circumstances in which the death sentence has been imposed. See, *e.g.*, *State v. Laney*, 654 S.W.2d 383 (Tenn.1983); *State v. King*, 694 S.W.2d 941 (Tenn.1985); *State v. Smith*, 695 S.W.2d 954 (Tenn.1985); *State v. Sparks*, 727 S.W.2d 480 (Tenn.1987). It is true that in this case the Rule 12 report of the trial judge is inadequate to provide all of the information which would be desirable to aid the Court in carrying out its required statutory review. Under T.C.A. § 39–2–205(c) the court must examine the record to determine whether the sentence

of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant. The proof in this case clearly shows that the defendant, announced his intent to kill his robbery victims if they resisted him and that, although the first round might have been accidentally fired in the struggle, he subsequently emptied his gun, shooting Mr. Price five or six times, before he ran away. The sentence in this case was not arbitrary or excessive or disproportionate to the sentence in other cases under the standards of comparative review which the Court carefully enumerated in *State v. Barber*, 753 S.W.2d 659 (Tenn.1988).

■ Defendant says the Tennessee death penalty statute is unconstitutional in that it places the burden of proof upon the defendant to prove that mitigating circumstances outweigh aggravating circumstances. He refers particularly to T.C.A. § 39–2–203(g) which provides:

(g) If the jury unanimously determines that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the State beyond a reasonable doubt, and said circumstance or circumstances are not outweighed by any mitigating circumstances, the sentence shall be death.

He says the statute provides no specific guidance as to whether the prosecution or the defense has the burden of proving whether the mitigation outweighs the aggravation. The statute cannot be taken out of context. T.C.A. § 39–2–203(f) integrates and complements sub-section (g) and specifically spells out where the burden of proof lies:

(f) If the jury unanimously determines that no statutory aggravating circumstances have been *proved by the State beyond a reasonable doubt,* or if the jury unanimously determines that a statutory aggravating circumstance or circumstances have been *proved by the State beyond a reasonable doubt* but that said circumstance or circumstances

are outweighed by one or more mitigating circumstances, the sentence shall be life imprisonment. (Emphasis supplied.)

The statute, taken in context, clearly outlines where the burden of proof lies. This argument was rejected in *State v. Thompson*, 768 S.W.2d 239, 251–252 (Tenn.1989).

Defendant further argues that the statute impermissibly interferes with the jury's discretion to impose a sentence less than death in that the jury is required to return a verdict of death unless mitigating circumstances outweigh the aggravating circumstances and so, a sentence of death is required where aggravating and mitigating circumstances are found to be evenly balanced. We think not. The statute, taken in its entirety, does not in any way unconstitutionally deprive the sentencer of the discretion mandated by the individualized sentence requirements of the constitution. The United States Supreme Court has noted in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 2330, 101 L.Ed.2d 155 (1988) that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is not constitutionally required. In *Boyde v. California*, — U.S. —, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990) the court had under consideration a mandatory statutory sentencing scheme similar to that utilized in Tennessee. The appellant in that case argued that the jury must have freedom to decline to impose the death penalty even if they decided that the aggravating circumstances outweigh the mitigating circumstances. The court held there is no constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence in an effort to achieve a more rational and equitable administration of the death penalty. The Tennessee statute does not require the defendant to assume the burden of proving mitigation or that mitigation outweighs aggravation. There is no reasonable likelihood a jury will apply the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. There is no likelihood that this stat-

utory language imposes a "presumption of death" upon the finding of one aggravating circumstance. See *State v. Wright*, 756 S.W.2d 669, 674 (Tenn.1988); *State v. Teague*, 680 S.W.2d 785, 790 (Tenn.1984).

Defendant has made a similar attack on the jury instructions at the sentencing phase of the proceedings citing *Blystone v. Pennsylvania*, 494 U.S. —, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). It is insisted that since a sentence of death is mandated unless the jury finds the mitigation to outweigh aggravation the statute interferes with the jury's discretion to decline the death sentence and since the jury instruction follows the statute, it too is constitutionally deficient.

The jury was instructed that in arriving at the determination whether the defendant should be punished by death or by imprisonment for life they were authorized to weigh and consider any mitigating circumstances, and any of the statutory aggravating circumstances which may have been raised by the evidence throughout the entire course of the trial, including the guilt phase as well as the sentencing phase or both.

They were more specifically instructed that if they unanimously determined that at least one statutory aggravating circumstance or several statutory aggravating circumstances had been proved by the State, beyond a reasonable doubt, and said circumstance or circumstances were not outweighed by any mitigating circumstances, the sentence should be death. If they unanimously determined that no statutory aggravating circumstance had been proved by the State beyond a reasonable doubt or if the jury unanimously determined that a statutory aggravating circumstance or circumstances had been proved by the State beyond a reasonable doubt; but that said statutory aggravating circumstance or circumstances are outweighed by one or more mitigating circumstances, the sentence should be life imprisonment.

In *Blystone*, supra, the Pennsylvania death penalty statute provided that "[t]he verdict must be a sentence of death if the jury unanimously finds at least one aggra-

vating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." The Court found at p. 1082 of 110 S.Ct. that the Pennsylvania death penalty statute satisfied the requirement that a capital sentencing jury be allowed to consider and give effect to all relevant mitigating evidence.

More closely aligned with the facts in this case are those in *Boyde v. California,* supra. In that case the jury was told to consider all applicable aggravating and mitigating circumstances and further directed: "If you conclude that the aggravating circumstances outweigh the mitigating circumstances, you *shall impose* a sentence of death. However if you determine that the mitigating circumstances outweigh the aggravating circumstances, you *shall impose* a sentence of confinement in the state prison for life without the possibility of parole." (Emphasis in original text). In *Boyde* at p. 1198 of 110 S.Ct., the court, in applying the reasonable likelihood standard commented that jurors do not sit in solitary isolation booths parsing instructions for a subtle shade of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at trial likely to prevail over technical hair splitting.

Assuming arguendo that the language of the statute as it existed at the time of defendant's trial, was couched in convoluted language,[1] as suggested by the defendant, we are of the opinion the statute does provide specific guidance to establish that the burden of proof remains with the prosecution throughout the sentencing process. There is no reasonable likelihood the jury can infer that they are asked to assume that the defendant has the burden of proving mitigation, or proving that mitigation outweighs aggravation.

■ Defendant says the trial judge's instructions during the penalty phase could have led the jury to believe they were required to vote for the death penalty unless they unanimously agreed on a particular mitigating circumstance which outweighed the aggravating circumstances, in violation of the Eighth Amendment of the United States Constitution, citing *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

This precise issue was reviewed in *State v. Thompson,* supra. The Court held that the method employed by the trial court in instructing the jury did not include any of the objectional features of the instruction in *Mills,* supra. Likewise the instructions given in this case parallel the language and structure of T.C.A. § 39-2-203. Neither the trial court's instruction in the penalty phase nor the jury verdict form, required the jury to list, much less agree on the existence of any mitigating facts. The issue is without merit.

■ Defendant charges the trial judge should have instructed the jury that the reasonable doubt standard applies to the imposition of the death penalty. The trial judge instructed the jury that the burden of proof is upon the State to prove any statutory aggravating circumstances or circumstances beyond a reasonable doubt to a moral certainty. He then gave specific instructions on the definition of reasonable doubt. The instruction given followed verbatim *Tennessee Pattern Jury Instruction,* T.P.I.—Crim. 20.03. The instruction in turn followed the statutory language of T.C.A. § 39-2-203(g), and we find it to be a sufficient and correct charge. See *State v. Porterfield,* 746 S.W.2d 441 (Tenn.1988).

■ Defendant has isolated a single phrase, "the sentence shall be death" from the jury instructions and argues that the instruction does not adequately inform the jury as to its discretion in the sentencing process. The portion of the instruction de-

---

1. The sentencing statute has been amended since defendant's trial and is now contained in T.C.A. § 39-13-204 which requires the jury to determine that the State has proved that any statutory aggravating circumstance outweighs any mitigating circumstances beyond a reasonable doubt before a sentence of death can be imposed.

leted by the defendant provides that the jury must unanimously determine that at least one statutory aggravating circumstance ... be proved by the State, beyond a reasonable doubt, and not be outweighed by any mitigating circumstances in order to mandate the death sentence. In response to a similar complaint in *Blystone*, supra, the Court said at pp. 1082–93 of 110 S.Ct., "[d]eath is not automatically imposed upon conviction for certain types of murder. It is imposed only after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime committed by the particular defendant, or that there are no such mitigating circumstances ... The presence of aggravating circumstances serves the purpose of limiting the class of death eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury ... The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." There is no merit to this issue.

■■■ The defendant says it was error for the trial judge to instruct the jury during the penalty stage to have no sympathy for the defendant. The instruction objected to was as follows:

> The jury in no case, should have any sympathy or prejudice or allow anything but the law and evidence to have any influence upon them in determining their verdict.

In *Saffle v. Parks*, —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) complaint was made in reference to a similar instruction. It was argued that the Eighth Amendment requires the jurors be allowed to base the sentencing decision upon the sympathy they feel for the defendant after hearing his mitigating evidence. After reviewing the decisions in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the court observed that there is no dispute as to the precise holding in each of those two cases: "that the State cannot bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial." However, they went on to say, "There is a simple and logical difference between rules that govern what factors the jury must be permitted to consider in making its sentencing decision, and rules that govern how the State may guide the jury in considering and weighing those factors in reaching a decision. We thus cannot say that the large majority of federal and state courts that have rejected challenges to antisympathy instructions similar to that given at Parks trial have been unreasonable in concluding that the instructions do not violate the rule of *Lockett* and *Eddings*. ... It is no doubt constitutionally permissible, if not constitutionally required, see *Gregg v. Georgia*, 428 U.S. 153, 189–195, 96 S.Ct. 2909, 2932–2935, 49 L.Ed.2d 859 (1976) ... for the state to insist that "the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987); *Parks*, supra at 110 S.Ct. 1261–1262." The issue is without merit.

■■■ Defendant complains of the State's closing argument at the guilt stage of the proceedings in which State's counsel said, "... and whether you like him or not, whether you think he was a sterling character or not—and there has been nothing in this courtroom that's ever been said about Bill Price (victim) to impugn his integrity." Defendant says these remarks violated the holding in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) that the introduction of a "victim impact" statement at the *punishment phase* of a capital trial was improper. In *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), also cited by the defendant, the United States Supreme Court reaffirmed *Booth* reiterating that use of victim impact statements in capital sentencing proceedings violated the principle that a sentence of death must be related to the moral culpability of the defendant

in that such statements introduced factors that might be wholly unrelated to the blame worthiness of a particular defendant. The prosecuting attorney's statements in this case were made during the guilt phase of the proceedings. He made no specific reference to the victim's character and the comment was not repeated during the sentencing phase. The United States Supreme Court has not applied the principles of *Booth* to the guilt phase of a capital trial. Moreover, the prosecutor's comments did not focus on the personal characteristics of the victim. There was no objection made to this comment during closing argument. If there was error at all, it was harmless in view of the overwhelming evidence of defendant's guilt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■ Defendant says the death penalty as imposed in this State is unconstitutional. Acknowledging that this Court has repeatedly found the death penalty imposed in Tennessee to be constitutional he preserves the issue for later review. There is nothing in either the State or Federal Constitution, historically or otherwise, which precludes the imposition of the death penalty in accordance with the procedures and under the circumstances provided for under the present statutes of this State. *State v. Austin*, 618 S.W.2d 738, 741 (Tenn.1981).

The defendants conviction of first degree murder and the sentence of death are affirmed. The death sentence will be carried out as provided by law on 1 December 1990, unless otherwise stayed or modified by appropriate authority. Costs are assessed against the defendant.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.