IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1996 SESSION

**FILED**

**May 30, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9512-CC-00404 |
| Appellee, | * | LAWRENCE COUNTY |
| VS. | * | Hon. Jim T. Hamilton, Judge |
| TERRY ALLEN DOMINY, | * | (Spousal Rape-3 Counts) |
| Appellant. | * | |

**DISSENTING OPINION**

I fully agree with the majority's conclusion that our court has the authority to modify the convictions from aggravated rape to spousal rape. Given that excellent resolution of the primary issue, it is tempting to concur in the modification of the convictions without contextualized review of other issues. In my view, however, there were other errors: (1) by allowing into evidence the full content of the victim's taped statement; and (2) by refusing to admit evidence that the victim previously had accused her brother of personally committing this same unusual crime. Because the legitimacy of the charges depends entirely upon the credibility of the victim, I cannot conclude that the errors had no effect upon the verdict. See State v. Kendricks, 891 S.W.2d 597, 604 (Tenn. 1994) (where "[t]he essential issue was credibility," erroneous introduction of evidence was not harmless); Tenn. R. App. P. 36(b).

Initially, the defendant had adequate notice that he faced charges for spousal rape. The indictments charged aggravated rape. In State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), the defendant was indicted for attempted first degree murder. Id. at 312. Our supreme court held that "[t]his indictment ... could ... form

the basis for a conviction, if the evidence is sufficient for that offense, for any offenses which are lesser grades or classes of attempted first degree murder ... or for any lesser included offenses...." Id. Because spousal rape is a lesser grade offense of aggravated rape, the indictment charging aggravated rape was sufficient for a conviction of spousal rape.

Furthermore, the majority's modification of the convictions has not precluded the right to a jury trial. Because the defendant was found guilty of aggravated rape, the jury determined beyond a reasonable doubt that the sexual penetration was accompanied by "[f]orce or coercion ... and the defendant [was] armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon." Tenn. Code Ann. § 39-13-502(a)(1). Spousal rape is the "unlawful sexual penetration of one spouse by the other [and]...[t]he defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon." Tenn. Code Ann. § 39-13-507(b)(1)(A). The only remaining element of spousal rape is the legal marriage. Their marriage certificate was evidence at trial. Thus a modification rather than a retrial would have been warranted, absent other error. See State v. Thornton, 730 S.W.2d 309 (Tenn. 1987) (reducing first degree murder conviction to voluntary manslaughter where evidence insufficient for first degree murder but overwhelmingly established manslaughter).[1]

The defendant also contended that the trial court erred by allowing the

---

[1]The majority concludes the jury found the "elements necessary to constitute aggravated rape by use of a deadly weapon." slip op. at 5. Neither aggravated rape nor spousal rape requires that the sexual penetration be achieved by use of a deadly weapon. Both offenses only require that the "defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon." Tenn. Code Ann. §§ 39-13-502(a)(1), 507(b)(1)(A). "Deadly weapon" is statutorily defined as a weapon that is capable of causing "death or serious bodily injury." Tenn. Code Ann. § 39-11-106(5)(A),(B). Thus for spousal rape, it is not necessary that the dog was capable of causing serious bodily injury or death. All that is necessary is that the victim was threatened by the dog or reasonably believed she was in danger from the dog.

jury to hear an audiotape of the victim's interview with the Department of Human Services. The majority concludes "the issues regarding the DHS tape are either meritless or have been waived." slip op. at 9. On August 2, 1994, more than six months after the last assault and less than a month after the indictment, the victim gave a statement to DHS. The defendant used portions of the statement to cross-examine the victim:

> Q: Didn't you have a conversation, with your mother
> being present, and Mr. Workman and Mrs. Mickie Pierce
> of D.H.S., and it was taped with a tape recorder, and they
> tape recorded what you told them?
>
> A: (No response)
>
> Q: Do you remember that happening?
>
> A: No. I don't remember it.
>
> Q: Now, when you testified about this February incident,
> you said it happened in the living room on the floor, didn't
> you?
>
> A: Yes.
>
> Q: And you told Mrs. Pierce and Mr. Workman back in
> August that it happened on the couch. Do you
> remember telling them that?
>
> A: Yes. With the dog.
>
> Q: You didn't tell them anything about it happening on
> the floor, or anything happening on the floor, on the third
> event, in this transcript, did you?
>
> A: No.
>
> Q: And when you talked to them, back in August, you
> told about how your husband left you for almost an hour--
> 45 minutes each time--and left the house. Got in the car
> and left. And you didn't make any attempt to leave at
> that time, did you?
>
> A: I went out there in the horse field.
>
> ***
>
> Q: Isn't it true that you told Mickie Pierce, back in
> August, when you talked about your husband, you said,
> "I tried to scare him, you know?"

3

A: Yes.

Q: So, how did you try to scare him? By bringing these false charges against him?

*** 

Q: How did you try to scare him? You told Mrs. Pierce you tried to scare him. What did you do?

A: He gonna hit me.

Q: What did you do to try to scare him?

A: I can't understand.

Q: Well. You agree you told her that. You told Mrs. Pierce that you tried to scare your husband, Terry, Right?

A: Yeah, I'm scared of Terry. Yes, I am.

Later in the trial, when the victim was no longer present, the state called Mickie Pierce, who conducted the interview. Ms. Pierce authenticated the audio cassette of the interview, which was then played in its entirety. The transcription is twenty-eight pages of text. The statement includes her detailed accounting of each of the three assaults; she did not refer to the occurrences as on the floor. The victim contended that the defendant routinely raped and beat her and, on less frequent occasions, attempted to starve her. The interview was conducted at the request of the District Attorney. Many of the questions suggested an answer supportive of the state's theory.

The defendant objected to the tape on hearsay grounds and argued that, at worst, the jury should be limited to the portions referred to on the prior cross-examination of the victim. A cross-examination may open the door to other parts of the statement. In State v. Boyd, 797 S.W.2d 589 (Tenn. 1990), our supreme court cited the following rule:

The general rule is, subject to certain exceptions, that

4

> evidence of prior consistent statements <u>may not be used</u> <u>to rehabilitate an impeached witness</u>. ... The State [is] allowed to place in proper context supposedly inconsistent statements brought into evidence by defendant. Where specific questions and answers taken out of context do not convey the true picture of the prior statement alleged to be inconsistent, it is unfair to permit reference to isolated, unexplained responses by the witness and there is no error in allowing the statements to be placed in context.

<u>Id.</u> at 593-94 (emphasis added). Under this rule, the state should be allowed to "convey the true picture of the prior statement alleged to be inconsistent"; however, the rule, in my view, does not form a basis for permitting subjects not a part of the cross-examination. These facts are almost identical to <u>State v. Braggs</u>, 604 S.W.2d 883 (Tenn. Crim. App. 1980). In <u>Braggs</u>, the defendant cross-examined the victim with a statement she had given the police;[2] thereafter, the assistant district attorney general "offered the entire statement, which when read in its entirety reflect[ed] no significant inconsistencies ...." <u>Id.</u> at 885. This court found error:

> Although prior inconsistent statements of a witness may be admissible for impeachment purposes,

---

[2]Neither party has contended the statement was admissible as a fresh complaint. It is doubtful if this complaint was made soon enough after the attack to so qualify. In <u>State v. Kendricks</u>, 891 S.W.2d 597, 604 (Tenn. 1994), our supreme court held that "Tennessee continues to require the complaint to be timely ... but whether a complaint [is] timely depends upon an assessment of all the facts and circumstances." The statement does not need to be spontaneous but it does need to be timely. <u>Id.</u> A statement made six months after the attack is not timely. See <u>Johnson v. State</u>, 296 S.W.2d 832 (Tenn. 1956) (statement made less than one hour after incident was timely); <u>Carroll v. State</u>, 370 S.W.2d 523 (Tenn. 1963) (statement made soon after incident was timely) (both cases cited with approval in <u>Kendricks</u>, 891 S.W.2d at 605.) See also <u>State v. Brown</u>, 871 S.W.2d 492, 494 (Tenn. Crim. App. 1993) (statement made eleven months after the offense was "stale within the meaning of fresh complaint.") More importantly, the <u>Kendricks</u> rule is that , "[i]f the questioning is clearly leading or overly suggestive, ... the resulting statement would not, in all likelihood, be the victim's product. Rather it would be questioner's product. In such case, the statement should, obviously, be excluded." <u>Kendricks</u>, 891 S.W.2d at 605. Here, the questions were clearly suggestive. For example, the following exchange occurred:

> Q: He tied your arms up.
> A: Uh-huh.
> Q: He tied your ankles.
> A: Yeah.
> Q: He pushed you on the floor.
> A: Yeah.
> Q: And he brought the dog in?

In my view, the statement would not qualify as a fresh complaint.

5

> the general rule, subject to certain exceptions, is that evidence of prior consistent statements may not be used to rehabilitate the impeached witness.

Id.

In my view, the state should have been allowed to place the alleged inconsistencies into context; however, the remaining portions of the statement should have been excluded as hearsay. "If extrinsic evidence of a prior inconsistent statement is used, the trial court has the discretion to screen it and excise irrelevant or otherwise inadmissible portions. This will prevent the jury from being exposed to inadmissible proof." Neil P. Cohen, Tennessee Law of Evidence, § 613.4 (3d Ed. 1995). The trial court should have redacted significant portions of the tape; it was error not to do so.

Next, the defendant argues that he should have been allowed to cross-examine the victim about a prior claim that her brothers raped her by use of a dog. The majority has reasoned that the defendant has not established a prior pattern of conduct and that a "prior nonconsensual act" is not evidence of consent in this case.

The dispute was whether the rapes ever took place. While acknowledging that the dog was involved in their sexual activities, the defendant claimed the victim was a willing participant. The defendant claimed this particular activity had occurred twice, the last time being four months before the victim claimed the first assault occurred. The state's case depended upon the credibility of the victim. Outside of the presence of the jury, the victim testified that when she was thirteen, one of her brothers forced her to have intercourse with a dog. She also claimed that her brothers had raped her and that she had become pregnant. Her brothers denied the accusations. Apparently, the matters were not prosecuted. The

6

trial court refused to allow the defendant to cross-examine the victim about these prior allegations. The defendant contended that if the victim had made false allegations in the past against her brothers, those facts would be relevant in this trial.

In State v. Reid, 882 S.W.2d 423, 427 (Tenn. Crim. App. 1994), this court ruled that "it was error for the trial court to prohibit the defendant from cross-examining the [female] victim" about criminal charges against her son; the victim had offered to drop the charges against the defendant in exchange for dismissal of the charges against her son. These facts were adjudged to have possibly motivated the victim to testify falsely against the defendant. In Reid, the only question was whether the victim or the defendant had testified truthfully about the events. This court ruled that because the impeachment of the victim would be so significant to the issue of guilt that the trial court, when it excluded the evidence, "went beyond reasonable limits given the importance of the victim as a witness." Id. at 430.

The policy behind the rape shield statute is to protect victims of rape from "unnecessary, degrading, and embarrassing invasion of sexual privacy." Tenn. R. Evid. 412 Advisory Commission Comment [1991]. That legislation must be considered as a part of my separate analysis. The rationale for the statute does recognize that there are exceptional circumstances when "the accused can only have a fair trial if permitted to introduce evidence of the alleged victim's sexual history." Id. This policy follows that expressed in Olden v. Kentucky, 488 U.S. 227 (1988). In Olden, the defendant wanted to cross-examine the victim about her relationship with a man. The defendant contended that there was a motive for the victim to lie in order to protect her present relationship. The trial court denied the cross-examination and the appellate court affirmed stating that "the petitioner's right

to effective cross-examination was outweighed by the danger that revealing [the victim's] inter-racial relationship would prejudice the jury against her." Id. at 232. The Supreme Court reversed stating that "[t]he Kentucky Court of Appeals failed to accord proper weight to petitioner's Sixth Amendment right 'to be confronted with the witnesses against him.'" Id. at 231.

In my view, whether or not the victim had been raped before would have no probative value for the jury in this case; however, the fact that the victim may have made false accusations in the prior instance goes to the core of her credibility. There is a likelihood that the defense should have been allowed to cross-examine the victim about her past allegations. Yet the trial court did not allow the defense to offer proof outside the jury's presence for the appellate record. This court has held in the past that trial courts do not have to allow such an offer of proof where there is no basis to believe that the evidence is relevant. Alley v. State, 882 S.W.2d 810, 816 (Tenn. Crim. App. 1994). If, however, the court cannot conclusively determine that the evidence is irrelevant, "it is error to exclude any reasonable offer which demonstrates the ... general import of the excluded evidence." Id. Because of the possible merit to the claim, I believe the trial court here should have allowed an offer of proof. In my opinion, the failure to allow that was error.

In my opinion, the cumulative effect of the evidentiary errors would ordinarily warrant a new trial.

_____
Gary R. Wade, Judge

8