Geeen, J.,
delivered the opinion of the court.
The prisoner at the bar has been tried in the circuit court of Smith county, for the murder of Isaac H. Davis, and was found guilty of murder in the first degree, and sentence of death pronounced. He moved for a new trial, which was refused, and he appeals to this court.
The struggle which resulted in the death of Davis, was seen by only one witness, James Lancaster. This witness states substantially, that on the day of the homicide, there was a sale at one Atwood’s — that Haile and Davis were there — ■ that they were both drinking, and an altercation took place between them — that they stepped one-side as if about to *249 fight, but the prisoner stopped and returned to the company, saying he thought Davis was joking. “Afterwards they were talking pretty much as before, and witness being about starting home, asked if any body was going his way. Both Davis and Haile requested him to wait for them. They all went the same road, to get home. Witness waited for a time; at length he set off on horseback, Davis then started — was on foot. Haile started to get his horse — did so and overtook witness and Davis by the time they had got one hundred yards. Davis run and overtook him, and as he passed the branch, fell upon one knee. Davis staggered — did not see Haile stagger any. As witness and Davis were going on, Davis said to witness, that Haile had been mad with him ever since he divided the property between him and his wife, and had been picking at him in every company he caught him in. While he was repeating these words, Haile came up, and hearing the words, said: Davis, you are mistaken; I have nothing against you, you are mistaken; for I have the papers at home, and your name is not in them. They both continued to go on talking, but the words they used witness cannot remember, but it was of the same kind they had been using, Haile still talking very loud. Davis said to Haile, if you will go out of sight, I will, or can whip you — thinks he said, I can whip you. Haile made no reply to it, talked on. Haile got down from his horse and, after a little they made friends. Witness thinks they shook hands, as he saw their hands in motion that way. They then went on again, Haile on his horse, going on in his loud talk, and quotations of scripture. Haile got down off his horse again, Davis was walking in a little path beside the road, a nd Haile by the side of him, in the main road, and his horse on the lower side of him. Davis said to Haile, don’t crowd me out of the road. Witness was ahead, and looked back as Davis said this — saw Davis’ elbow move towards Haile, and Haile going off suddenly towards his horse, like *250 Davis had shoved him off with his elbow, but did uot see it touch. Haile got on his horse, still talking loud as he had done before. As they both went on, Davis said to Haile, I thought we had made friends, and now let it stop, or stop it, or something to that amount. These were the last words witness heard Davis say, that he remembers to have understood before they arrived at the place of the difficulty. Just at this place Davis said something to Haile, what it was, witness cannot remember, but to which Haile said, it is a damned lie. The last time witness had seen them before these last words passed, they were side by side. When these words were used, witness was then some fifteen or twenty steps ahead, and Davis was moving forward in the same direction, and was opposite to the horse’s head, some two, three or five feet off, and Haile’s foot was just about over the horse’s rump, in the act of dismounting on the side where Davis was walking. Witness turned his head and kept on his way. When he turned his head again, the parties seemed to have hold of each other, sorter pulling and pushing one another. Haile seemed to have had his bridle on his arm, and umbrella under the other arm, the horse’s head was seesawing as they moved each other. Witness still went on, and when he turned his head again, he saw their hands up like they were sorter over, Haile’s horse was still by. This is the last witness saw of the difficulty. Soon after, or about this time, witness heard Haile say, see here Lancaster, or here Lancaster, these are the only words he heard, that he can remember. There was a good deal of noise, witness still kept on. He thought he would go out of the road and hitch his horse and go back, just then he heard Haile coming. Witness had an extra saddle behind him, and when he had got eighty to one hundred and twenty-five yards, Haile come by him in a gallop — had his umbrella — saw a little blood on the side of his face — thinks it was on the right side. Haile said, you go back there Lancas-. *251 ter, I have done devilment, or mischief, don’t remember which woi’d he used. Haile still continued in a gallop — saw no dirt upon him, or other blood — he did not look for dirt or blood— did not think of either. He went back, found Davis dead— saw appearances of a scuffle on the ground — Davis was some eight or ten steps from the road where he last saw the parties. The appearance of the scuffle was from the road to the place where Davis lay. He was badly cut. The soil rather black when wet, but rather light when dry. It was dry weather.”
In addition to this witness, there were many other witnesses examined by the State, and by the prisoner, to establish, or to disprove the existence of previous malice, but it is unnecessary to refer to the other proof in this opinion.
The court instructed the j ury as to the law, in reference to murder in the first degree, and murder in the second degree.
In relation to manslaughter, his Honor said, among other things, “To determine whether the killing upon provocation amounts to murder or manslaughter, the instrument used, and the manner of using it, is a material fact to be considered by the jury. It must bear some reasonable proportion to the provocation to reduce the crime to manslaughter. If the defendant engaged in a fight, neither having a deadly weapon drawn to be used in the fight, but in the progress of the fight the defendant’s reason being temporarily dethroned by passion, and he killed Davis; it would be manslaughter, if he acted upon his passion thus aroused — otherwise, if he acted upon malice, it would be murder in the second degree.”
The counsel for the defendant requested the court to charge the jury: 1st. “That if they believed from the proof, in the cause, that the defendant during the combat, commenced upon equal terms, used a deadly weapon, not previously prepared for that purpose, in the fight, it would be no evidence of malice.”
*252 2d. The counsel also requested the court to charge: “That the statement made by Davis, that “Haile had been mad at him ever since he divided the property between him and his wife, and that he had been picking at him in every company he caught him in, and that he had abused his family,” are not evidence of these facts, and could not be looked to by the jury as proof of the facts.” Which instruction the court refused to give “on the ground, that said propositions are embraced in the charge already given.”
The question now is, whether in either of the foregoing-propositions, his Honor erred.
1. In relation to the first instruction asked for, we think the instruction given by his Honor, in his charge to the jury, as above quoted, announces substantially the principle assumed by the defendant’s counsel.
He tells the jury, that if the parties engage in a fight, neither having a weapon drawn, to be used in the fight, but in its progress the defendant in a passion killed the deceased, it would be manslaughter only. This embraces all that is asked for by the counsel.
It is true, the judge says, the killing would be manslaughter if the reason of the prisoner were temporarily delhroned by passion.
This strong figure of speech, we have had occasion to say, in the case of Young vs. The State, (11 Humph. R.,) ought not to be employed by a judge, in his instruction to the jury, because it is calculated to mislead, and is not justified by the authorities. If a man kill another upon sudden heat, produced by adequate provocation, it is manslaughter. 1 Hale P. C., 466. As if upon a sudden quarrel, two persons fight, and one kills the other, this is manslaughter. 1 Hawk. P. C., 82; 4 Bl. Com., 191.
When such language as this is employed, the jury are in no danger of misunderstanding it. But when we say, that it *253 is manslaughter, if the killing be done when the reason is temporarily dethroned ly passion, the jury may infer, that no sudden heat, short of the dethronement of reason, will mitigate a killing to manslaughter, and thus be misled.
2. But the second instruction asked for, had not been given, as his Honor supposed, and the failure of the judge to give it, may, possibly, have proved fatal to the prisoner.
The statement of Davis to Lancaster, as part of the res gestae, was properly detailed to the jury by Lancaster, to show the circumstances under which the scuffle between the parties was brought about; and if it had been made in presence of Haile, without denial, or contradiction, by him, it would have been proof of the facts stated. But having been denied by Haile, it was no evidence of the truth of the facts.
Ordinarily, such a question would rarely be raised, the principle is so undeniably clear; but when raised, it is manifest that it was the duty of the court to state the law correctly. For in z’efusing to give the instruction asked for, he left the jury to infer, that the negative of the principle he was requested to state, was the law, and thus, they may have supposed, this declaration of Davis was proof of malice, a conclusion necessarily fatal to the prisoner.
Reverse the judgment, and remand the cause for another trial.