*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MIKA'EEL ABDULLAH ABDUS-SAMAD, formerly
known as Michael J. Boyd,

*Petitioner-Appellant,*

*v.*

RICKY BELL, Warden,

*Respondent-Appellee.*

No. 03-6404

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02756—Bernice B. Donald, District Judge.

Argued: July 21, 2005

Decided and Filed: August 25, 2005

Before: COLE, GILMAN, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Robert L. Hutton, GLANKLER BROWN, Memphis, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Robert L. Hutton, John T. Moses, GLANKLER BROWN, Memphis, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge. Mika'eel Abdullah Abdus-Samad (formerly known as Michael J. Boyd), a Tennessee inmate sentenced to death following his 1986 jury conviction for first-degree felony murder, appeals the district court's grant of summary judgment to Warden Ricky Bell on Abdus-Samad's petition for a writ of habeas corpus. A certificate of appealability was granted on six claims. These six claims, as well as a request for an evidentiary hearing, are raised on appeal. For the following reasons, we **AFFIRM** the district court's judgment.

1

# I.

A Tennessee state jury convicted Abdus-Samad of first-degree felony murder and two counts of robbery. The trial court sentenced Abdus-Samad to death for the murder conviction and to life imprisonment for each robbery conviction. The Supreme Court of Tennessee affirmed Abdus-Samad's convictions and sentences on direct appeal and recited the following facts:

> Defendant was convicted of the felony murder of William Price and of the armed robberies of Price and his companion, David Hippen, in Memphis during the early morning hours of 8 November 1986. On the night of November 7-8, Price and Hippen, who had come to the Memphis area from Kansas City to visit Price's father, drove in Price's Ford van to downtown Memphis to find a motel room. As they proceeded on this mission they decided to solicit some female companionship. They were directed by an individual they met along the way to Raiford's Lounge on Mulberry and Vance Streets, where two women, Barbara Lee and Renita Tate, agreed to accompany them and got into the van. Lee had been at the disco with her boyfriend, the defendant Boyd, and with two other men, Bruce Wright and Terry Yarber.

> Price, Hippen and the two women drove to the parking lot of the Lorraine Motel, where Price started to give one of the women a $100 bill to rent two rooms. Because the men would not let both women leave the van at the same time, the two women began to argue about which of them would go to the office to pay for the rooms. At this time apparently all the doors of the van were open. Price was sitting in the driver's seat, Hippen in the passenger seat. Lee was standing outside the van on the passenger's side and Tate was standing outside on the driver's side. The lights were on in the parking lot, and the van's dome and side door lights were also on.

> While the women were arguing, Wright, Yarber and the defendant drove up in Wright's gray 1982 Oldsmobile Regency 98 and parked adjacent to the van. Barbara Lee called to the men in the car and asked if they had change for a $100 bill. Defendant left the car, approached the van and reached into his back pocket as if getting his wallet. Barbara Lee was either pushed out of the way by defendant or ran away from the van. Defendant stepped into the van on the passenger side behind the driver's and passenger's seats. He then pointed a pistol toward Hippen's face and said, "I want your money or I'm going to kill you." He snatched the $100 bill from Price's hand. Hippen gave defendant his wallet, which contained $30.

> As defendant leaned over Hippen, Price grabbed his arm and shoved it onto the console. Defendant fired a shot and the three men began to struggle over the gun. As the victim started the van and tried to drive away, the defendant "emptied" his gun at him. Injured, Price fell from the van, which crashed into a brick planter at the base of the Lorraine Motel sign.

> Defendant jumped from the van and, carrying the gun, ran back to Wright's vehicle. The defendant told Wright to leave because he had some trouble and said "he had shot the dude" and thought he might have killed him. When asked what had happened, defendant said the men had been trying to take his gun.

> After Wright's car left, Hippen ran to Price, who was already dead, and then summoned help. A pathologist testified that the cause of Price's death was multiple gunshot wounds. Five or six wounds were found in Price's body. Two of these, one to the heart and another to the spine, had been fatal. All of the bullets had traveled

into the body from right to left, indicating the shots had been fired from the right side of the victim. Hippen had received powder burn injuries to the inside of his legs during the struggle for the gun. Defendant was apprehended on 9 November 1986. At the time he was riding in Wright's automobile. Barbara Lee was driving. At a line-up the next day, Hippen immediately identified him as the assailant. Police found no drugs or weapons in or around Price or the van. No money was found in the van although, according to Hippen, Price had stuffed $500 under the driver's seat of the van because he was afraid the women might steal the money.

*State v. Boyd*, 797 S.W.2d 589, 592-93, 599 (Tenn. 1990). Abdus-Samad twice sought to set aside his convictions and sentence on state post-conviction review, but his efforts proved unsuccessful. *State v. Boyd*, 959 S.W.2d 557, 558 (Tenn. 1998); *Boyd v. State*, No. 02C01-9512-CR-00392, 1997 WL 686262, at *1 (Tenn. Crim. App. Nov. 5, 1997).

In August 1998, Abdus-Samad filed a *pro se* petition for a writ of habeas corpus in federal district court. After the appointment of counsel, Abdus-Samad filed an amended petition in December 1998. Without conducting an evidentiary hearing, the district court granted Warden Bell summary judgment as to all claims and dismissed the petition. Upon Abdus-Samad's motion, the district court granted a certificate of appealability ("COA") for five claims alleging federal constitutional error: (1) that the Tennessee Supreme Court conducted a flawed harmless error analysis after it concluded that the jury considered an invalid aggravating factor; (2) that the prosecution withheld material and exculpatory evidence at trial; (3) that the prosecution presented false or misleading evidence at trial; (4) that the trial court failed to instruct the jury on lesser-included offenses; and (5) that trial counsel rendered ineffective assistance at the guilt phase. We then granted an additional COA for Abdu-Samad's challenge to his prior murder conviction, a conviction that served as the sole aggravating factor making him eligible for the death penalty.

## II.

### A. Standard of Review

We review the district court's summary denial of Abdus-Samad's habeas petition *de novo*. *Workman v. Bell*, 178 F.3d 759, 765 (6th Cir. 1998). Because Abdus-Samad filed his petition after April 24, 1996, it is subject to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified in various sections of 28 U.S.C.). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Williams v. Coyle*, 167 F.3d 1036, 1040 (6th Cir. 1999). Under AEDPA, a writ may not be granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court renders an adjudication "contrary" to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court renders an "unreasonable application" of federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Factual findings made by the state trial court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Bugh v. Mitchell*, 329 F.3d 496, 500-01 (6th Cir. 2003), *cert. denied*, 540 U.S. 930 (2003). With this standard of review in mind, we now turn to the issues presented on appeal.

## B. The Tennessee Supreme Court's Harmless Error Analysis

During Abdus-Samad's sentencing phase, the trial court permitted two aggravating circumstances to be considered by the jury: (1) that Abdus-Samad had a prior conviction for a violent felony (he was previously convicted of second-degree murder); and (2) that the murder for which Abdus-Samad was then on trial occurred during the perpetration of a felony. In reviewing Abdus-Samad's conviction, the Tennessee Supreme Court held that the felony committed during a felony murder cannot be considered an aggravating factor under state law. The court reasoned that an aggravating factor must be something more than the mere elements of the particular homicide, because such elements would not "narrow the class of death eligible murderers," and instead would allow all felony murderers to have an aggravating circumstance. *Boyd*, 959 S.W.2d at 559-60 (citing *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992)).

Having determined that the trial court erred by permitting this invalid aggravating factor, the Tennessee Supreme Court went on to consider whether this error was harmless. Abdus-Samad claims that the Tennessee Supreme Court's harmless error analysis was contrary to clearly established Supreme Court precedent.

The Tennessee Supreme Court applied the harmless error test as set forth in *State v. Howell*, 868 S.W.2d 238 (Tenn. 1993), holding that the erroneous inclusion of felony murder as an aggravating circumstance "does not require a resentencing hearing if the reviewing court concludes beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor." *State v. Boyd*, 959 S.W.2d at 560 (internal quotation marks omitted). In conducting this harmless error inquiry, the court noted that it must carefully consider all factors that may have influenced what sentence was imposed, including other aggravating factors and the strength of the arguments. *Id*.

Abdus-Samad argues that the proper harmless error inquiry is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 24 (1967) (internal quotation marks omitted). Abdus-Samad claims that the *Chapman* standard is less stringent than the *Howell* standard because an aggravating factor may contribute to a verdict even though the jury surely still would have sentenced the defendant the same way in the absence of the factor. The district court concluded that there was no meaningful difference between the *Chapman* and *Howell* standards, and that the state court did not have to "parrot phrases from decisions of the [United States] Supreme Court" in order to pass federal scrutiny.

The district court was correct. The Supreme Court has embraced the "beyond a reasonable doubt" standard set forth in *Howell*. *See Clemons v. Mississippi*, 494 U.S. 738, 753 (1990) (holding that the Mississippi Supreme Court applied the "proper" harmless error standard from *Chapman* when it decided "that it was beyond reasonable doubt that the jury's verdict would have been the same with or without" the improper aggravating factor); *Stringer v. Black*, 503 U.S. 222, 230-31 (1992) (same). Accordingly, regardless of whether other harmless error formulations would satisfy the Eighth Amendment, the Tennessee Supreme Court's harmless error analysis was not contrary to *Chapman* or other clearly established Supreme Court precedent.

Abdus-Samad alternatively argues that even if the "beyond a reasonable doubt" standard is the appropriate harmless error standard, the Tennessee Supreme Court's decision in his case

involved an unreasonable application of the standard. He points to the fact that during sentencing, the jury was repeatedly told that there were two aggravating factors and the defense had to concede these points. Abdus-Samad argues that because there were only two aggravating factors and one was invalid, half of the State's case for death was improper. Abdus-Samad also notes an important mitigating factor: the jury did not find that he intended to kill the victim; rather, it found that he intended to rob the victim and thus convicted him of felony murder.

Under AEDPA, our review is confined to whether the Tennessee Supreme Court's harmless error analysis was an unreasonable application of clearly established Supreme Court precedent. At the outset, we recognize that in a state such as Tennessee, which requires its juries to weigh aggravating and mitigating factors, "when a court invalidates one of the aggravators, it has removed a mass from one side of the scale. There is no way to know if the jury's analysis—how the aggravating and mitigating circumstances balanced—would have reached the same result even without the invalid factor." *Coe v. Bell*, 161 F.3d 320, 334 (6th Cir. 1998) (citing *Stringer*, 503 U.S. at 231-32). However, despite the fact that state appellate courts can never truly determine how a jury viewed an improper aggravating factor, the Supreme Court has repeatedly held that it is appropriate for a state appellate court itself to reweigh the aggravating and mitigating circumstances when determining whether consideration of the invalid aggravating factor by a sentencer was harmless:

> We accordingly see nothing in [state court] appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence. Nor are we impressed with the claim that without written jury findings concerning mitigating circumstances, [state] appellate courts cannot perform their proper role.

*Clemons*, 494 U.S. at 750. The *Clemons* Court went on to state:

> There is no reason why the [state] Supreme Court cannot examine the balance struck . . . and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. . . . "What is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime."

*Id*. at 753 (quoting *Zant v. Stephens*, 462 U.S. 862, 879 (1983)); *see id*. at 750 (noting there *would* be a basis for concluding that the state supreme court's harmless error analysis violated the Eighth Amendment by producing "arbitrary" sentences if, in reweighing the factors, that court also considered the improper aggravating factor); *see also Stringer*, 503 U.S. at 231 (discussing *Barclay v. Florida*, 463 U.S. 939, 958 (1983) which affirmed a death sentence despite the fact that the sentencer had relied on an improper aggravating factor—the defendant's criminal record—because "it was clear that the Florida Supreme Court had determined that the sentence would have been the same had the sentencing judge given no weight to the invalid factor").

Moreover, in reviewing the Tennessee Supreme Court's analysis, we cannot ourselves reweigh the aggravating and mitigating factors; rather, we are limited to ensuring that the Tennessee Supreme Court's harmless error review was not unreasonable. *Coe*, 161 F.3d at 334. "[U]nder 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [federal law] incorrectly. Rather [the petitioner] must show that the [state court] applied [federal law] to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002) (internal citation omitted).

In Abdus-Samad's case, the Tennessee Supreme Court reviewed the record and considered the strength of the one remaining aggravating factor, the prosecutor's arguments at sentencing, the evidence admitted to establish the invalid aggravating factor, and the nature, quality, and strength of the mitigating factor. *See Boyd*, 959 S.W.2d at 560-63. First, the Tennessee Supreme Court considered the petitioner's alleged mitigating factor. During the sentencing phase, the jury considered the fact that Abdus-Samad's intent to kill the victim was never proven. Although the jury weighed this factor, Abdus-Samad's lack of intent to kill the victim does not automatically foreclose the imposition of the death penalty in this case, because such intent is not a required element under Tennessee law for proving first-degree murder in perpetration of a robbery. While Abdus-Samad's mitigating factor cannot be treated lightly, the Tennessee Supreme Court was permitted to consider the strength of this argument and weigh it against the remaining aggravating factor. In so doing, that court acknowledged that Abdus-Samad's mitigating evidence consisted solely of his own testimony that he did not intend to kill the victim, and that he was sorry that Price died. *Id.* at 562. However, the court also noted that Abdus-Samad would not take responsibility for his part in this shooting. *Id.*

Next, the Tennessee Supreme Court determined that the impact of the improper aggravating factor was not significant enough to put the jury's decision in question. During the guilt phase, the jury had already heard sufficient evidence to support its finding that Abdus-Samad committed the robbery. Accordingly, the court found that the prejudicial effect of such evidence was limited. *Id.* Further, the court noted that "the record reveal[ed] that the prosecution did not emphasize the felony murder aggravating factor . . . in the sentencing phase. No additional evidence was introduced in support of the factor, and relatively little reliance was placed on it during the prosecutor's argument." *Id.* at 561.

Instead, the Tennessee Supreme Court found the jury's consideration of the remaining, legitimate aggravating factor to be critical. Abdus-Samad had recently been convicted of second-degree murder, an aggravating factor that the Tennessee Supreme Court held can be qualitatively more significant than other aggravating factors, and can be independently sufficient to support the sentence. *Boyd*, 959 S.W.2d at 561; *see Howell*, 868 S.W.2d at 261. The court, upon evaluating the arguments made regarding the aggravating factors, and the strength of such arguments, concluded that the prior-murder-conviction factor—and the way in which the prosecutor relied upon this factor—was sufficient to show that the jury's verdict would not have changed had the jury not considered the improper aggravating factor. The Tennessee Supreme Court found it important that, rather than belaboring the invalid aggravating factor,

> the prosecution stressed the defendant's prior conviction throughout its argument as demonstrated by the following passage:
>
>> The law also says if you kill once and then you kill again, it's okay for you to suffer the consequences of the death penalty. What does it take, ladies and gentlemen? How many people have to die before we put a stop to [the defendant]. Do we have to wait until he kills and kills and kills again? He's killed twice. You would think . . . after killing once that a man like that, if he's got any conscience at all, would want to get as far away from a pistol, an instrument of death, as he could ever get . . . It's good for nothing other than to kill other human beings. Twice [the defendant] used the same instrument of death. It's time . . . to put a stop to it.

*Boyd*, 959 F.2d at 561-62 (alterations in original) (quoting prosecutor's closing argument at sentencing). Given that the improper aggravating factor did not convey new information to the jury and was not stressed by the prosecutor, and that the remaining aggravating factor was quite

significant, it was not "unreasonable" for the Tennessee Supreme Court to determine that the jury's verdict in this case would have been the same had it not considered the felony-murder aggravating factor. *Cf. Clemons*, 494 U.S. at 752; *Barclay*, 463 U.S. at 958 (for the Court) (upholding the state supreme court's affirmance of a death sentence where the sentencer improperly considered the defendant's extensive criminal history as an aggravating factor, where the remaining aggravating factors included the heinous nature of the crime and the fact that the murder took place during the perpetration of a felony, and there were no mitigating factors); *see also id*. at 968 (Stevens, J., concurring). The jury's consideration of the improper aggravating factor in this case has not so infected the balancing process such that it is constitutionally impermissible for the Tennessee Supreme Court to let the sentence stand. We therefore AFFIRM the district court's grant of summary judgment to Bell on this claim.

## C. Abdus-Samad's *Brady* Claim

Abdus-Samad next alleges that the State withheld material exculpatory evidence at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court determined that Abdus-Samad had defaulted his *Brady* claim. Under AEDPA, a federal court may only grant relief on a habeas petition if the claims at issue have been exhausted in the state courts. *See* 28 U.S.C. § 2254(b)(1). A claim is exhausted if the state court addressed the substance of the asserted claim. If, however, the state court declines to address the substance of a claim because of an independent and adequate state ground, such as a procedural bar, then the claim is presumptively defaulted and the federal court is precluded from reviewing it. *Wainwright v. Sykes*, 433 U.S. 72, 81-83 (1977). A default may nonetheless be excused by the federal courts if the petitioner can show cause for, and prejudice resulting from, the default, or if he can show actual innocence. *Id*. at 87-88; *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (holding that a claim of actual innocence can excuse an otherwise procedurally barred claim).

Abdus-Samad's *Brady* claim has been procedurally defaulted because he presented this claim after the expiration of the then-applicable three-year statute of limitations for asserting a claim for post-conviction relief in Tennessee. *See* Tenn. Code Ann. § 40-30-202 (1990) (repealed in 1995). However, Abdus-Samad asserts that his actual innocence can excuse his procedural default. *Schlup*, 513 U.S. at 315. The standard for evaluating Abdus-Samad's actual-innocence claim is whether, in light of the new evidence, "it is more likely than not that 'no reasonable juror' would have convicted him." *Id*. at 329. Because the merits of Abdus-Samad's actual-innocence claim are closely tied to the merits of his *Brady* claim, we must examine the alleged exculpatory evidence to determine whether that evidence supports an actual-innocence claim.

Abdus-Samad claims that the State failed to disclose: (1) a Memphis Police Department supplementary report stating that the Bureau of Alcohol, Tobacco, and Firearms ("ATF") had suspected that the victim and his father were transporting drugs and possibly guns; (2) statements made to the police by Terry Yarber (Abdus-Samad's friend) and Barbara Lee (Abdus-Samad's girlfriend) that they did not believe Abdus-Samad had robbed the victim; and (3) a parole recommendation for Hippen written by the district attorney after Abdus-Samad's trial. Upon close review, this evidence does not establish by a preponderance of evidence that no reasonable juror would have convicted Abdus-Samad.

First, the fact that the victim may have been involved in the drug trade does not support a claim of actual innocence in this case. The fact that the victim was suspected of transporting guns may increase the likelihood that it was actually the victim, not Abdus-Samad, who was armed on the night in question and initiated the fight. However, the jury already heard testimony from an individual named Travis Bland who had referred Hippen and Price to the Raiford's Lounge to solicit prostitutes. Bland testified that he asked Hippen and Price if they would be "alright," considering that they were in a high crime area, and they responded that they would be fine and flashed what

Bland thought was a gun. The jury was also told of Hippen's prior drug convictions. Even if the ATF reference had been introduced, such evidence does not establish that Price had a gun on the night in question. Furthermore, if Price did have a gun that night, sufficient evidence establishes that Abdus-Samad was responsible for the shooting, since both Hippen and Bruce Wright (Abdus-Samad's friend) testified that Abdus-Samad had a gun.

Second, the statements by Terry Yarber and Barbara Lee fail to show actual innocence. Terry Yarber was one of the two men accompanying Abdus-Samad. In a statement to the police he said: "I believe the bitches shot the dude. I didn't see Michael [(Abdus-Samad)] with the pistol at all." However, Yarber testified that he stayed in his car during the confrontation and thus could not see what actually took place. In any event, Bruce Wright specifically testified that the petitioner was carrying a gun immediately before and after the confrontation that led to the fatal shooting. As for Barbara Lee's statement to the police, she also did not witness the murder. Because both Yarber and Lee's statements are purely speculative, Abdus-Samad has not shown that "no reasonable juror," having heard this evidence, would have convicted him.

The final item of evidence is the district attorney's parole recommendation for Hippen, recommending early release for Hippen because of his cooperation for testifying in Abdus-Samad's case. From the district attorney's letter, Abdus-Samad argues, one can infer that the State made a deal with Hippen, which it failed to disclose to Abdus-Samad, and which Abdus-Samad could have used to undermine Hippen's testimony and expose a bias at trial. The letter, however, reveals no reference to any deal between Hippen and the State. Moreover, Abdus-Samad has failed to establish that a parole recommendation of this sort is highly unusual without there having been a prior deal in place between the State and the witness.

In sum, these items of potential *Brady* evidence do not support Abdus-Samad's actual-innocence claim. Accordingly, Abdus-Samad's procedural default of his *Brady* claims is not excused. We therefore AFFIRM the district court's grant of summary judgment to Bell on the *Brady* claim.

## D. Abdus-Samad's *Giglio* (False Testimony) Claim

In a similar claim, Abdus-Samad argues that the prosecution elicited false testimony from Hippen regarding the reason why Hippen and Price traveled to Memphis. A false-testimony claim is cognizable on federal habeas review because the "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and quotation marks omitted). Abdus-Samad concedes that his false-testimony claim ("*Giglio* claim") has been defaulted because he failed to exhaust it in state court. As with his *Brady* claim, Abdus-Samad attempts to circumvent the default by claiming actual innocence. Again, we must consider the purported false testimony to decide if it supports Abdus-Samad's actual-innocence claim. *See Schlup*, 513 U.S. at 329.

The evidence presented by Abdus-Samad to support his *Giglio* claim does not lend support to Abdus-Samad's actual-innocence claim. Abdus-Samad's contends that the prosecution misled the jury to believe that Hippen and Price were innocently traveling to Memphis when in reality they were participating in a drug or gun deal. Abdus-Samad again claims that the ATF reference indicates that Hippen and Price were the ones armed on the night in question, and that therefore they were the ones who started the fight. However, Abdus-Samad's argument fails for the reasons previously noted. The jury already heard Bland's testimony that Hippen and Price flashed what Bland thought was a gun on the night in question. This did not persuade the jury that Hippen and Price initiated the fight. The addition of the much weaker ATF evidence does not, therefore, prove by a preponderance of the evidence that no reasonable juror would have convicted Abdus-Samad. Accordingly, Abdus-Samad's default of his *Giglio* claim is not excused and the claim is procedurally

defaulted. Even if we were to combine this evidence with the *Brady* material from Abdus-Samad's prior claim, his actual innocence still would not be established.

Further, even if Abdud-Samad's default were excused, his false-testimony claim would fail. To prevail on a false-testimony claim, Abdus-Samad must show (1) that the prosecution presented false testimony (2) that the prosecution knew was false, and (3) that was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992). The statement must be "indisputably false" rather than "merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000) (quoting *United States v. Lochmondy*, 890 F.2d 817, 823 (6th Cir. 1989)). Abdus-Samad argues that the prosecution elicited false testimony from Hippen when Hippen testified that he traveled to Memphis simply to "come down for a talk with [Price's] dad." Abdus-Samad believes that Hippen and Price must have traveled to Memphis to do more than talk to Price's dad, and that they must have been engaging in some sort of drug or gun deal. Even if we assume that Abdus-Samad's suspicions are correct, he has not shown that the State procured "indisputably false" testimony from Hippen. At most, Abdus-Samad's evidence, absent any evidence to the contrary, indicates that Hippen failed to offer additional information, such as the intended discussion that he and Price were going to have with Price's father. As a result, Abdus-Samad's *Giglio* claim would not entitle him to habeas relief. We thus AFFIRM the district court's grant of summary judgment to Bell on this issue.

## E. Abdus-Samad's Request for an Evidentiary Hearing

In the alternative, Abdus-Samad argues that the district court should have granted his request for an evidentiary hearing to develop a factual basis for his *Brady* and *Giglio* claims. The district court's refusal to grant Abdus-Samad an evidentiary hearing is reviewed for abuse of discretion. *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002). Regarding evidentiary hearings, AEDPA provides that:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Here, Abdus-Samad contends that he meets the strict requirements under AEDPA for an evidentiary hearing because: (1) he could not have previously discovered the factual predicate for his *Brady* or *Giglio* claims since the State withheld material evidence; and (2) the facts underlying these claims would be sufficient to show that no reasonable factfinder would have found him guilty of the felony murder.

Regardless of whether Abdus-Samad could have, with due diligence, discovered the *Brady* and *Giglio* evidence before his state post-conviction proceedings,[1] Abdus-Samad has not shown that his *Brady* and *Giglio* claims would result in no reasonable factfinder finding him guilty of the underlying offenses. As previously discussed, the new evidence regarding the ATF reference, the statements made by Yarber and Lee to the police, and the parole recommendation for Hippen are largely irrelevant in light of the other evidence presented to the jury. Accordingly, Abdus-Samad cannot show that no reasonable factfinder would have found him guilty of felony murder. We therefore conclude that the district court did not abuse its discretion by declining to conduct an evidentiary hearing.

## F. Lesser-Included Offenses

Next, Abdus-Samad claims that his trial was fundamentally unfair because the trial court did not provide the jury with instructions for the lesser-included offenses of voluntary and involuntary manslaughter pursuant to *Beck v. Alabama*, 447 U.S. 625 (1980). Instead, Abdus-Samad was charged with first-degree murder in perpetration of a robbery, first-degree murder, and second-degree murder. The jury found Abdus-Samad guilty of first-degree murder in perpetration of a robbery, i.e., felony murder. The district court found Abdus-Samad's *Beck* claim to be procedurally defaulted, because he failed to present the issue properly as a federal issue before the Tennessee Supreme Court. Even if Abdus-Samad's *Beck* claim has been fairly presented to the Tennessee Supreme Court, and therefore not procedurally defaulted, his claim ultimately fails because the Tennessee Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

Abdus-Samad argued to the Tennessee Supreme Court that his trial was flawed because the jury was not instructed as to certain lesser-included offenses. In his brief to the Tennessee Supreme Court, Abdus-Samad cited only to Tennessee Code § 40-18-110(a), and *State v. Wright*, 618 S.W.2d 310 (Tenn. Ct. App. 1981). He argued that under these authorities, there was "a mandatory duty upon the trial judge to charge the lesser offense[s]." The district court held that Abdus-Samad had not exhausted his *Beck* claim since he did not "fairly present" the claim in state court. In particular, the district court noted that Abdus-Samad presented no federal claim to the state court regarding the necessity of presenting an instruction for a lesser-included offense to the jury. Furthermore, the district court noted that the state court relied on no federal basis in denying this claim. On appeal, Abdus-Samad argues that his inclusion of *State v. Wright* in his brief to the Tennessee Supreme Court was sufficient to present his federal *Beck* claim to that court because the right articulated in both cases is identical.

We assume without deciding that Abdus-Samad fairly presented his *Beck* claim because in any event it lacks merit.[2] In *Beck*, the Supreme Court held that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [the state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." 447 U.S. at 638. The Court noted that it was not basing this holding on the due process clause; rather, the Court found that "the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty . . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Id*. at 638 n.13 (citation and quotation marks omitted). Consequently,

---

[1] The State argues that Abdus-Samad "had access to law enforcement files from and after January 29, 1992." Accordingly, if this is correct, Abdus-Samad had access to any potential *Brady* or *Giglio* evidence before his post-conviction evidentiary hearing was held in state court on January 21, 1994.

[2] Although the district court did not reach the merits of Abdus-Samad's *Beck* claim, we can affirm the district court's grant of summary judgment to Bell on grounds not reached by the court. *See, e.g.*, *Dismas Charities, Inc. v. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005).

under *Beck*, the question becomes whether "the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Id.* at 635 (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)).

Abdus-Samad contends that the state trial court should have instructed the jury as to the lesser-included offenses of voluntary and involuntary manslaughter. As an initial matter, we note that the jury was instructed as to second-degree murder, which is a lesser offense than first-degree murder in the perpetration of a felony, and which does not confer eligibility for the death penalty. However, the jury chose not to convict Abdus-Samad of this crime. This strongly suggests that the failure to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter was at most harmless error, because the jury was given the option of convicting Abdus-Samad on a lesser-included offense and yet declined to do so. In other words, if the jury chose felony murder over second-degree murder, there is no basis to believe that it would have opted for the even lesser offense of voluntary manslaughter over felony murder.

In any event, we will examine Abdus-Samad's argument regarding voluntary and involuntary manslaughter. At the time of Abdus-Samad's trial, manslaughter was defined in Tennessee as "the unlawful killing of another without malice, either express or implied, which may be voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." Tenn. Code Ann. § 39-2-221 (1982) (repealed 1989).

First, voluntary manslaughter is only available where the evidence shows that the defendant "acted in a state of passion sufficient to obscure his reason and that the passion was produced by reasonable and adequate provocation." *State v. Brown*, 836 S.W.2d 530, 553 (Tenn. 1992) (emphasis omitted). In the instant case, the Tennessee Supreme Court determined that "[t]here was clearly no evidence [that] the killing was committed upon a sudden heat produced by adequate provocation." *See State v. Boyd*, 797 S.W.2d 589, 593 (Tenn. 1990). On appeal, Abdus-Samad attempts to analogize his case with two Tennessee cases in which the defendant had been in some sort of struggle with the victim—either over a gun or otherwise—and where the State charged the defendant with manslaughter. *See State v. Roberts*, No. 01C01-9110-CC-00296, 1993 WL 266835, at *2 (Tenn Crim. App. July 15, 1993); *Haile v. State*, 31 Tenn. (1 Swan) 248 (1851). However, these cases are not helpful to Abdus-Samad. In *Roberts*, the defendant was convicted of voluntary manslaughter where the defendant's estranged wife pulled a gun on the defendant and a struggle ensued and the defendant gained control of the gun and shot his wife. *Roberts*, 1993 WL 266835, at *2. The court found that the facts corresponded to "voluntary manslaughter, which is defined as 'the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.'" *Id.* (citing Tenn. Code Ann. § 39-13-211(a)). *Roberts* is distinguishable from our case, because the defendant in *Roberts* presented evidence that he was provoked by his wife who had spontaneously pulled a gun on him. The defendant in *Roberts* also attempted to show that a reasonable person would have acted as he did. To the contrary, Abdus-Samad presented no such evidence. Given that the jury found that Abdus-Samad intended to rob the victim, a provocation argument would have required some evidence, testimonial or otherwise, to show that in the midst of the robbery, Abdus-Samad was somehow provoked in a manner that would cause a reasonable person to shoot Price numerous times.

*Haile* is equally unavailing, as it involved two friends who, while on horseback, were involved in an escalating argument about the victim having an affair with the defendant's wife, resulting in the defendant killing the victim, perhaps with his whip and umbrella, where there were no witnesses to the killing. *Haile*, 31 Tenn. (1 Swan) 248, 1851 WL 1992, at *1. The Tennessee Supreme Court found that the jury should have been allowed to consider evidence relating to the heat of passion in these circumstances. Again, the defendant in *Haile* had presented evidence that

he was provoked and thrown into a heat of passion regarding whether the victim had had an affair with defendant's wife.

Neither of these cases lends sufficient support to Abdus-Samad's argument. While the evidence indicates that Abdus-Samad was in some sort of struggle over the gun, the evidence does not stop there. The evidence also indicates that Abdus-Samad intended to rob the victim, and therefore, at the very least intended to steal the victim's property with the threat or use of force. *See* Tenn. Code Ann. § 39-13-401(a). Moreover, Abdus-Samad has made no cogent argument, nor did he present any evidence to the jury, that the killing was done in the "heat of passion," or that Price had "provoked" Abdus-Samad in such a way that a reasonable person would have behaved as Abdus-Samad did. Given the lack of a factual basis for Abdus-Samad's claims, we cannot find the Tennessee Supreme Court's decision—that the evidence would not permit a jury rationally to find him guilty only of voluntary manslaughter—to be unreasonable.

Second, a finding of involuntary manslaughter would be precluded by the facts. Involuntary manslaughter may be found "where it plainly appear[ed] that neither death nor any bodily harm was intended, but death [wa]s accidentally caused . . . ." *State v. Ford*, 643 S.W.2d 913, 915 (Tenn. Crim. App. 1982) (citation omitted). The fact that Abdus-Samad shot the victim with a pistol five to six times makes it virtually impossible to find that the killing was accidental, especially where Abdus-Samad has made no argument that the gun at hand discharged like an automatic weapon or had a sensitive trigger. *See State v. Boyd*, 797 S.W.2d 589, 593 (Tenn. 1990) (finding that there was no "evidence supporting an involuntary manslaughter charge. As we previously noted, a pathologist testified that the death was caused by multiple gunshot wounds. There was a total of five or six shots to the victim's body."). We cannot find that the Tennessee Supreme Court's ultimate conclusion—that the evidence would not permit a jury rationally to find Abdus-Samad guilty of involuntary manslaughter and acquit him of first-degree murder in the perpetration of a felony—involved an unreasonable application of *Beck*. Accordingly, we AFFIRM the district court's grant of summary judgment to Bell on this issue.

## G. Abdus-Samad's Prior Murder Conviction

Abdus-Samad also argued to the district court that his prior murder conviction should not have been used as an aggravating circumstance supporting his death sentence, because the prior conviction was unconstitutional. Abdus-Samad claims that his prior conviction for second-degree murder was flawed because the state trial court did not specifically inform Abdus-Samad of his Fifth Amendment right against self-incrimination before he pleaded guilty, and because he was unaware that he was admitting to having "intent" to commit murder.

The district court concluded that Abdus-Samad's prior conviction was final and unreviewable by the court. *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001) ("[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid."). On appeal, Abdus-Samad argues that his situation falls under an exception to the general rule set forth in *Lackawanna*. The *Lackawanna* Court held that a habeas petitioner may attack a prior conviction if "there was a failure to appoint counsel." *Id*. at 404. A three-justice plurality of the Court then speculated that there might be other exceptions to this rule, in situations where the subsequent federal habeas petition is "the first and only forum available for review of the prior conviction." *Id*. at 405-06. Specifically, the plurality acknowledged two exceptions: (1) where a state court, without justification, refuses to rule on a constitutional claim that has been properly presented; and (2) where a defendant subsequently obtains "compelling evidence that he is actually innocent." *Id*. at 405. Even if these plurality exceptions were controlling, however, the district court was correct not to revisit Abdus-Samad's prior conviction.

First, the federal habeas court was not the "first and only forum available for review" of the prior conviction. In actuality, the state courts reviewed Abdus-Samad's Fifth Amendment claim. In 1983, Abdus-Samad, represented by counsel, pleaded guilty to a charge of second-degree murder in state court. *Boyd v. State*, No. W1999-01981-CCA-R3-PC, 1999 WL 33261797, at *1 (Tenn. Crim. App. Dec. 21, 1999). In March 1988, Abdus-Samad filed a petition for post-conviction relief from his 1983 second-degree murder conviction. After the appointment of counsel, the state court dismissed the petition in February 1990, concluding that Abdus-Samad's guilty plea to second-degree murder satisfied constitutional requirements. *Id.* at *2 (quoting the post-conviction court, which held "[w]ith respect to petitioner's claim that he was not advised of his right against self-incrimination in a trial, the Court finds to be without merit. . . . This Court has received transcripts of each of the hearings and, where petitioner has failed to rebut the same, finds such to be *prima facie* evidence that he was informed of this privilege. . . . [The] petitioner knowingly and intelligently waived his privilege against self-incrimination."). While Abdus-Samad argues that the state courts unduly delayed in considering his subsequent motion for reconsideration,[3] he cannot claim that the federal habeas court was the first available forum for consideration of his Fifth Amendment claim against his prior conviction.

Second, Abdus-Samad argues that the district court should review the validity of the prior conviction under *Lackawanna*, because he is "actually innocent of the death penalty" where the only aggravating factor—here the prior conviction—is flawed. Abdus-Samad's argument fails. Abdus-Samad claims that when he pleaded guilty to the 1983 second-degree murder, he was not informed that he was waiving his right against compulsory self-incrimination. Additionally, he claims that he did not understand that second-degree murder includes an element of intent. However, the facts fail to show actual innocence. Abdus-Samad signed a document entitled "Petition for Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty" on October 17, 1983, indicating that, after being advised by his attorney, Abdus-Samad understood the nature of the charges against him. A guilty plea entails the waiver of: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A guilty plea is valid only if the defendant enters into it intelligently and voluntarily, factors which may be determined from the totality of the circumstances surrounding the plea. *Brady v. United States*, 397 U.S. 742, 747, 749 (1970). Abdus-Samad does not now challenge the competency of counsel's representation during the guilty plea, he does not dispute his signed acknowledgment, and he does not assert that he believed he was pleading guilty to another charge. During the plea colloquy, the trial court stated, "You could take the stand and testify in your own behalf in each case, if you wanted to, or if you choose not to testify, your failure to testify could not be brought out against you in a trial of these matters; do you understand?" Abdus-Samad answered affirmatively. On post-conviction review, the trial court held that this exchange supported a finding that Abdus-Samad voluntarily and intelligently waived his privilege against self-incrimination. Abdus-Samad now presents nothing to overcome the presumption of correctness that attaches to the state court's findings based upon the transcript. *See Bugh v. Mitchell*, 329 F.3d 496, 500-01 (6th Cir. 2003). Accordingly, even under the plurality exceptions of *Lackawanna*, the district court was correct not to revisit Abdus-Samad' prior conviction for second-degree murder.

---

[3] In March 1990, Abdus-Samad moved the state court to reconsider its decision dismissing his petition for post-conviction relief. However, he did not file a notice of appeal. In December 1998, the state court denied Abdus-Samad's motion to reconsider and to hear proof. *Boyd*, 1999 WL 33261797, at *2. At that time, Abdus-Samad filed a notice of appeal from both the February 1990 and December 1998 orders. *Id.* The Tennessee Court of Criminal Appeals determined that, concerning the February 1990 order, Abdus-Samad's notice of appeal was filed beyond the thirty-day time limit and considered the appeal waived. *Id.* at *7. Concerning the December 1998 order, the court concluded that it lacked jurisdiction under relevant state rules. *Id.* at *5.

## H. Ineffective-Assistance-of-Counsel Claim

Abdus-Samad states in his brief that "[b]ecause [his] appointed post conviction lawyer did nothing to develop the factual basis of the I.A.C. claim (or any other claim) in state post conviction court, [he] needs a remand to the district court for an evidentiary hearing to develop facts to support this claim." Rather than briefing the issue as he did with each of his other claims, Abdus-Samad referred this Court to arguments that he presented to the district court. His arguments before the district court, however, primarily concerned whether he procedurally defaulted his ineffective-assistance-of-trial-counsel claim.

The district court found Abdus-Samad's ineffective-assistance-of-trial-counsel claim to have been procedurally defaulted because it was not properly exhausted in the state court proceedings. Abdus-Samad claimed below that the default should be excused because of the ineffective assistance of his state post-conviction counsel who failed to raise the trial counsel's ineffectiveness. First, as a general matter, there is no constitutional right to an attorney in collateral proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). Therefore, any errors of a post-conviction attorney, acting as the agent for his client, are attributable solely to that client. *Id.* at 753-54. Abdus-Samad argued below that there is a constitutional right to post-conviction counsel when the state collateral proceeding is the first forum in which a claim—such as the ineffectiveness of trial counsel—can be raised. While *Coleman* did not explicitly reach this issue, we have previously addressed whether a petitioner can use his post-conviction counsel's ineffective assistance as a means of excusing a procedural default. In *Byrd*, 209 F.3d at 515-16, we stated:

> [I]f the state court record was inadequately developed, it was so because Petitioner failed to pursue the avenues that were available to him to develop it. . . .
>
> Perhaps Petitioner's post-conviction counsel negligently failed to pursue potential avenues of discovery adequately. Even so, this is clearly not a sufficient ground for relief . . . . 'The state court is the most appropriate forum for resolution of factual issues in the first instance . . . .'

*Id.* (quoting *Eaton v. Angelone*, 139 F.3d 990, 995 (4th Cir. 1998)); *see also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425-26 (6th Cir. 2003) ("Gulertekin cannot use her post-conviction attorney's alleged ineffectiveness to establish cause for the procedural default, however, because there is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings . . . . [T]herefore [Gulertekin] must bear the risk of attorney error that results in a procedural default.") (internal quotation marks and alterations omitted); *United States v. Corbin*, No. 96-4248, 1997 WL 453154, at *2 (6th Cir. Aug. 8, 1997) (unpublished) ("It is well-settled that there is no federal constitutional right to appointed counsel in a collateral civil challenge to a conviction.").

Accordingly, Abdus-Samad's ineffective-assistance-of-trial-counsel claim has been defaulted by his failure to exhaust this claim in state court. Moreover, Abdus-Samad has failed to show why an evidentiary hearing in the district court would be permitted under 28 U.S.C. § 2254(e)(2). The district court's grant of summary judgment to the Warden on this claim is therefore AFFIRMED.

## III.

For the preceding reasons, we **AFFIRM** the district court's grant of summary judgment to Warden Bell as to each of the claims presented on appeal.